They will be Surat v. Klamser, 21-1284. Good morning, Your Honors, barely. May it please the Court, Andrew Ringel on behalf of the Defendant Appellant Randy Klasmer. This case is before the Court on an interlocutory appeal on qualified immunity. Officer Klamser argues both prongs of the qualified immunity inquiry, both the fact that there is no constitutional violation based on the facts articulated in the light most favorable to the plaintiff, with the caveat of those facts that cannot be contested based on the Heck v. Humphrey decision of the District Court, and then we also argue the clearly established prong of the qualified immunity analysis. I would start with the frame that I think the Court needs to analyze this, and frankly the proper frame is what the District Court did in its order on the motion to dismiss, and not what the District Court did on its order on the motion for summary judgment. If the Court analyzes this from the perspective of the convictions for resisting arrest and obstruction of justice, and the criminal jury's rejection of the self-defense affirmative defense in the criminal trial, there are facts that cannot be part of the inquiry about whether or not this is a qualified, you know, whether or not this is a violation of the Fourth Amendment. Well, let me test that. So anytime you have someone who is, has even admitted to resisting arrest, if they're resisting arrest, the officer could take out their gun and empty all of the chambers into the person? No, Your Honor. Okay, so there can be instances where the force is excessive, even when someone is resisting arrest, correct? There can be, but I think the Court is, that question is not what the argument is that we're making, Your Honor, with all due respect. Well, you can have, what I'm talking about is your Heck argument, is that there is no reason that the conviction is intricately intertwined with the issues that are before us today. So the Court misunderstands the argument, I believe, and if I'm inarticulate and about it, we are not arguing that this Court has pen and appellate jurisdiction on Heck. We are saying that the District Court decided Heck, and once it made that determination, it was incumbent on the District Court to decide what facts are precluded by Heck and can be, cannot be determined for purposes of the summary judgment decision. That's what the Court didn't do here, and the Court, in its order on the motion to dismiss, outlined it, outlined the scope of the inquiry, as we cite repeatedly in the brief, but the summary judgment didn't follow the same analysis. What was the scope of the inquiry on the motion to dismiss that the Court outlined? So the, quoting the Court, the Court says, finally, if Klasner ever asserts qualified immunity, he has not done so in the motion to dismiss, then Surratt's burden is even more formidable. She must prove that it was clearly established as of April 6, 2017, that a police officer attempting to effect an arrest and being subjected to or threatened with physical force or violation, or facing a substantial risk of bodily injury, and who has already tried lawful lesser force to subdue the RSD, cannot use the takedown maneuver used in this case to eliminate that actual or threatened force or risk of injury. And the motion to dismiss was based just on the allegations, right? And then you had evidence, and you had a summary judgment that was based on that evidence, right? That's correct. And the district court made, as I read it, specific findings about exactly what Ms. Surratt did in terms of resisting arrest. I think the term was pawing at the officer and trying to remove his arm. Would you agree? I would agree that the district court's findings on summary judgment are inconsistent with its analysis on Heck. Yes, I would agree with that. I don't understand why that is. Why is that? I don't agree with that. Why is it inconsistent with Heck? Because the point is... The district court said everything before she resisted, none of that force was an issue. It's the force after she resisted. Right. But the point is that what the district court didn't focus on is the objectively reasonable perspective of the officer cabined by Heck. Because the idea is the analysis has to be because of the self-defense rejection, that there was lesser force used and that lesser force was not effective in solving the problem from the officer's perspective. And so that's the point of the analysis of Heck. And that's not what the district court did. Self-defense rejection went to everything that happened before the use of force. That's true, Your Honor, except... I mean, that doesn't even play into this at this point. I disagree with that. Well, that's what the district court found. I understand that the district court is wrong. And the reason the district court is wrong, Your Honor, is because of what I just read to the court in response to your earlier question. The officer already tried lawful lesser force and that was ineffective. That's the piece of the analysis that carries over into whether the takedown maneuver was objectively reasonable. If the court reviews the summary judgment order from the district court in this case, that part of it is not part of that order at all. Okay, let me interrupt you again. If we accept that there was an attempt using lesser force to subdue Ms. Surratt, does that mean the officer can pull out his gun and shoot her? No, Your Honor. Okay, so even... Please let me finish my question. Even if there is an attempt to subdue with lesser force, it doesn't tell us that this force is reasonable. We have to look at this force at the moment it was used, which I think is Judge Moritz' point here. That is correct, except it's within the prism of the totality of the encounter between the two people. I think the court's point, your question related to shooting a gun, is appropriate in the theoretical sense of, no, that's not an appropriate thing for a police officer to do. But where I take issue with it is on the clearly established part of the analysis, because there is no... We're not there yet. We're talking about prong one right now, right? But the facts, as the court understands, go to both issues. What facts provide the quantum for the qualified immunity inquiry goes to both prong one and prong two. I agree with you. And on prong two, none of the nine cases that are cited by the plaintiff or the district court have anything to do with the trying of lesser force that's ineffective. That's the fundamental point of the clearly established inquiry. And because the district court erred in how it applied heck on summary judgment, it also erred in how it applied the clearly established inquiry. And that's a basis for this court to reverse. In considering prongs one and two, can we consider not only the district court's findings of what a reasonable fact finder could have found, but also the video beyond Scott versus Harris, beyond considering whether or not... In other words, to supplement the factual findings that the district court made, can we consider not only the findings, but also the video? I think the court can consider the video, but two points with respect to that. I think Scott versus Harris allows the court to review the video. And I'm not talking about for purposes of blatant contradiction of the facts. I understand. But I think the court has to look at all of the videos and not just the one video that the plaintiffs cite in their brief. OK. And then the other thing I would say is this. The limitation on reviewing the video is the temporal part of it. In the sense of, as we've already talked about, heck means you can't go back and do the stuff before the resisting. But you have to look at it not in terms of what was happening. The video can't be... Let me do this in a different way. And I apologize for losing my train of thought. You can't review the video in a way that's inconsistent with the criminal jury's findings. OK. Because otherwise, you're violating heck, right? Yeah. OK. But as a general proposition, I think it's OK for the court to review the video. Can I ask you a question? It's a different question than the judgment you asked, but it's maybe related. But it's going to hammer me on the same point. But you're right. I understand. It's a fair warning. But I'll just tell you honestly, this is what I think the district judge did. And I don't know. But I think the district court watched that video and said, yeah, if you look at obstruction of a peace officer and resisting arrest, she used physical force to impede the officer in his public duties. And so, yes. And she was convicted. So under heck, I can't collaterally challenge that. But if you watch all of the videos, this is a 115-pound woman in a minidress. She's obviously not armed. She is facing a 200-pound, very muscular officer who is surrounded by other officers. And she's not trying to clobber her in the head. She's trying to unsuccessfully and without any possibility of succeeding to pry his fingers off of her. And the judge said, well, under Hope versus Peltzer, I know it when I see it. There is no police officer in the United States that could have thought that this was constitutional under Graham versus Conner. I've got three responses for you, Your Honor. Response number one, you can't watch just the video and ignore the criminal jury's And therein lies the predicate for my question is that she was guilty of obstruction and resisting by trying to pry his fingers off. Rule number two, as we argue in the brief, Hope versus Peltzer, in my opinion, does not apply in the Fourth Amendment context. The Supreme Court has never said that you get to have an obvious case in the Fourth Amendment context. Hope and the Taylor decision are Eighth Amendment cases. And as we point out, the Eighth Amendment and its deliberate and different standards are very different than the Fourth Amendment's split-second standard. And let me make sure I understand what you're saying there. What you're saying is a general application of the Graham factors to unique facts is not enough. You have to have a published case that actually makes that application and concludes its successive course. That's right. And the reason for that is, I mean, I counted them. There's seven United States Supreme Court decisions. Most of them are per curiam reversals on cert petitions that go out of their way to say that the courts have to have specific and particularized facts in the cases and be analogous. And what about Davis? What about Davis? What about Morris? I mean, they haven't said we have to have absolutely identical facts, and that's not going to happen, obviously. It's not going to happen. So but what about Davis? Let's talk about Davis, and let's talk about Morris. Those are cases that are published cases of this Court that applied the Graham factors. And the reason they're not good enough is twofold. It has to do with the issue of the fact that lesser force is tried and that failed. There is no discussion in any of the cases. What does that have to do with whether the ultimate force that was used was excessive under the Graham factors? Because you can't parse it the way that I think you're trying to parse it. It has to be the totality of the circumstances. If I'm an officer and I choose and I try to do something that's lesser and use lesser force, in this case a risk block, and that doesn't work, that justifies me to understand that I need to do the next step, which in this case was a takedown. And that's the question. Was that the next step or was that excessive in light of this circumstance? That is still the question, regardless of whether he tried some other method, which was grabbing your arm. I understand that that's the first prong analysis, but what you were talking about was the second prong analysis. And under that analysis, Norris and Davis don't address that issue because there is no factual congruity. And the Supreme Court's treatment of this Court's decision— There was minimal resistance in Davis. Minimal. And that's what we have here. We have minimal resistance. Fundamentally, I disagree, Your Honor, because the resistance in this case has a jury conviction. There was no jury conviction in those cases. And we can assume that that jury conviction was for exactly what the district court made a finding about here, which was she attempted to pry his hands off of her, which was physical force that met the definition under Section A, which was the only section the jury was instructed on. May I respond to the question? Your Honor, with all due respect, the Court can make that determination. But fundamentally, when this Court looks at what is the specific and particularized precedent, this is a distinction that we believe matters. The Court in White v. Pauley changed—you know, in all of the other cases, White v. Pauley made a distinction to say it has to be specific and particularized. This is a distinction between these facts and the facts of all those other cases that, in our view, makes a dispositive difference on the clearly establishing of the Court. Thank you, Your Honor. I'm going to give you 20 seconds to tell us what your third argument was. You said, I've got three responses, and you told us two. The third is—and I was looking for it—is the Fifth Circuit case that I cite in the brief for the proposition that the analysis has to be based on the perspective of the officer or a reasonable officer in the scene without zooming, rewinding, and stopping video. Because I think there's some danger in looking at video in the way that I look at it in my chambers. And the Fifth Circuit's point is to remind the courts of that proposition. Okay. Thank you. Thank you, Your Honors. Your Honors, and may it please the Court. My name is Katherine Ardoniz, and I represent the plaintiff in this case, Ms. Michaela Surratt. This Court should dismiss this appeal for lack of jurisdiction or, in the alternative, dismissing the merits. With respect to jurisdiction, the district court certified this appeal as frivolous, calling it a thinly veiled challenge to the district court's factual determinations. Neither defendant claims those challenges to the district court's view of the record nor his challenges to the district court's factual—I'm sorry—neither—or to the district court's HEC determinations are reviewable on interlocutory appeal. Well, but we can—we certainly have jurisdiction to consider the legal arguments in the context of the factual findings of the district court. Yes. You are correct that there is jurisdiction to consider the purely legal issues with respect to qualified immunity. However, as was stated during Defendant Clamser's oral argument, he appears to be trying to get out of proving inextricable intertwinement in order to get this court to exercise dependent jurisdiction over the HEC issues on appeal. That is required and is convenient given that, as we've explained in our brief, Defendant Clamser cannot prove that the issues are inextricably intertwined in this case. So you're talking about supplemental jurisdiction over HEC? Yes. And we can say, no, we're not going to do that and still have jurisdiction over the legal issues based on the factual findings of the district court. Absolutely. Okay. Yes, agreed. So let's assume we're going to do that. I don't know what they'll say, but— Okay, so at least skipping the HEC analysis for now, the district court properly found on the first prong of qualified immunity that there was a constitutional violation in this case. Applying the Graham factors, the district court concluded that two of the factors, including the most important one, the second one, weigh heavily in favor of Miserat. With respect to the first factor, the severity of the crimes at issue, the district court properly concluded that resisting arrest and obstructing justice are both misdemeanor offenses, citing this court's decisions in Roe v. City of Cushing, which found that a conviction for resisting arrest was not severe, and this court's decision in Casey v. City of Federal Heights, which found that obstruction is a minor crime. In Morris v. Noe, though, a majority of our court said that assault, even though it is a misdemeanor, marginally supports the defendant. So here there is no conviction for assault, and the district court viewed the dispute's effect in the summary judgment record in the light most favorable to Miserat as it was required to do at summary judgment. Well, I understand that, but I thought your argument was the fact that it is classified as a misdemeanor means categorically that this factor is going to support the plaintiff, and that seems inconsistent with Morris v. Noe. That is, I apologize if I represented that, Your Honor. That is not my position. Instead, the district court properly concluded that these particular misdemeanors of resisting arrest and obstruction of justice are minor crimes and cited to this court's precedent in establishing as much. Moving on to the second factor, the district court also found properly that a reasonable court could find Miserat posed little to no threat to Defendant Clamser or others. She was an unarmed, 22-year-old, 115-pound woman, and Defendant Clamser was a 30-year-old, 200-pound, muscular man, as Your Honor previously mentioned. She was minorly resisting arrest by not complying with verbal orders and attempting to pry away from Defendant Clamser's wristlock hold, but the video evidence in the case depicts that she was not assaulting or threatening Clamser before the takedown. Well, you know, we have a number of videos, and some you can't really see everything that happened before the takedown. So it's, you know, we don't really know exactly. All we can go with are the findings of the court, which are I think she was pawing at him and trying to remove his arm. Yes, Your Honor, and that would lead you to the same conclusion that a reasonable jury could find that Miserat posed little to no threat to Defendant Clamser or others. On the third factor— Let me ask you about that. Your answer referred to the video, and I had thought, notwithstanding the concession from Defendant's counsel, that on an appeal from the denial of qualified immunity on interlocutory review, that under Lewis v. Tripp, that we look at the universe of factual assumptions the district court made based on what a fact finder could find, and that we only consider the underlying facts, like a video under Scott v. Harris, to the extent that those factual assumptions are blatantly contradicted by the record. Nobody suggested that the factual assumptions that the district court made are blatantly contradicted by the record. So I had thought that when we look at this appeal, we only look, we don't look at the factual assumptions of the district court. My vote probably is going to be quite different if I look at the video, because it does look pretty extraordinary of what the Officer Clamser did. However, I'm not convinced that the Defendant's concession was necessary. I thought you restrict yourself to the factual findings. Well, Your Honor, the factual findings of the district court, in part, did derive from the video evidence that we were referring to, which is the Clamser body-worn camera, the Passer body-worn camera, and the CSU bar stool video, which is the video that went viral on the internet. And to the extent that the district court considered those videos in making its findings, and the videos are in the summary judgment record, this court should review those videos on appeal in determining de novo, whether the district court properly denied qualified immunity. With respect to the third factor, the district court acknowledged that Ms. Verratt doesn't dispute that she resisted arrest, and that it weighs slightly in Defendant Clamser's favor. However, the district court applied this court's precedent, which held that extreme forces unjustified where a plaintiff resisted arrest, but the crime was non-severe, and the plaintiff did not pose a serious or immediate threat to the officer's safety. So overall, on the first prong of qualified immunity, the district court properly weighed the grand factors and concluded that a reasonable jury could find Defendant Clamser used excessive force against Ms. Verratt. Turning to prong two, what's your best case for clearly established? I would point the court to Morris v. Nell. This court's decision in Morris clearly established that an officer may not use a forceful takedown maneuver on an unarmed misdemeanant who poses little to no threat to the officer's safety. The big difference I see in Morris is that in the facts, he did not resist. He had his arms up, backing toward the officer when basically the officer attacked him. That's not this case. It is not precisely the facts of this case. However, this court has recognized that because the existence of excessive force is a fact specific inquiry, there will almost never be a previously published opinion involving the exact same circumstances. And at the same time, they've told us that we can't do it too broadly and that just applying the grand factors isn't good enough. Well, Your Honor, I would respond to that, that the Supreme Court has left open the possibility for Graham alone to clearly establish the law in obvious cases. I'd point the court to Brosseau v. Hogan, 543 U.S. 194, decided in 2004. And in that case, the Supreme Court said this case is far from the obvious one where the general test set out in Graham can clearly establish the answer to the clearly established law inquiry, even without a body of relevant case law. Well, do you think this case really falls that far outside of the regular case on an excessive force as Brosseau? Absolutely. I think that this is a very obvious case. And I would also remind or note for the court that the two cases defending Klamzersheid City of Tleil-e-Kwabi Bond and Mullenix v. Luna concern the use of deadly force. And that is very different than our case here where there was no hammer that was threatening to be thrown at the police like there was in the City of Tleil-e-Kwabi and there was no violent car chase with threats to shoot the officers in Mullenix. So to the extent that defendant Klamzer relies on those cases to say that Graham alone cannot clearly establish the law, those cases are distinguishable. But it's also distinguishable when you try to cite to us cases where the officer used deadly force. I mean, deadly force is an important circumstance. And it seems to me it's got to line up if you want us to say it's clearly established, both in terms of what the defendant did or the suspect did and what the officer did. Well, Your Honor, I am not trying to say that any case involving deadly force clearly established the law here. Instead, I cited to Brasso only to say that the Supreme Court, at least in dicta, has left open the possibility of Graham alone clearly establishing the law in an excessive force case. I also think a circumstance that's important is whether the suspect is resisting arrest. And in some of the cases the district court relied on, there's, in fact, findings that there was no resistance. And I think you have to, when we're looking at what the Supreme Court requires, I think you're going to have to have a case where it's not deadly force and they were resisting arrest. Well, Your Honor, I would point this court to its opinions in Cook v. Peters and in Long v. Fulmer. In both Cook and Long, the court applied Morris and found that Morris clearly established the law and found excessive force in those cases. Those cases were unpublished. Yeah. But are you suggesting that because they interpreted Morris, that's significant even though they're unpublished? Yes, Your Honor. The same reasoning that the court applied in Cook v. Peters and in Long v. Fulmer to say that the law was clearly established under those circumstances applies in this case. In Cook v. Peters, which was actually decided by Judges Bacharach and Judge McHugh, this court affirmed the denial of qualified immunity where the plaintiff resisted arrest by pulling away from the defendant. But he was 200 pounds lighter than the defendant, 11 inches shorter, and he posed little to no immediate threat to anyone at the time of the takedown. And it's unpublished, and so it can't be the basis of clearly established. Our law couldn't be clear. The Supreme Court couldn't be clear. I understand that, Your Honor. And I would also argue that the Supreme Court has been directing since Cook was decided, directing us that us sitting down and for the first time applying the Graham factors and saying, yep, under the Graham factors, any reasonable officer should have been able to tell this is over the line. Unlike you, I think they've told us that's not good enough anymore unless you have something absolutely egregious, like the case where they break in her windows and yank her out of the car and beat her up. I mean... Well, two responses to that, Your Honor. One, I would reiterate that Morris v. No is sufficiently analogous to this case to clearly establish the law in this circuit. Although there was no resistance in Morris, he was an unarmed, nonviolent misdemeanant who the police forcefully took down. But the lack of resistance is critical. There would be absolutely no reason for an officer to apply force at all, of any level, if you're not resisting. So to me, that's a critical fact that has to be in a case that you claim clearly is that racist. You could be posing a threat, even if you're not resisting or opposing a threat. But he, this one... In that case, there was neither one. And in this case, the district court has found that a reasonable jury could find that Ms. Clamser, I'm sorry, Ms. Surratt was not posing any threat to Defendant Clamser at the time of the takedown. While you still have time, could you address the distinction that Appellant's counsel made several times, which is that in this case, the officer had tried to use a lesser means of force. And in those cases, there was no attempt to use a lesser means before the more aggressive. I would invite the court to read Cook v. Peters, Long v. Fulmer, and Rowe v. Cushing. At least Long v. Fulmer and Rowe v. Cushing involved some resistance. So in Long, the plaintiff's right to be free from a forceful takedown was established, where he exercised some resistance. And then the same is true in Rowe v. Cushing. The plaintiff's crimes of resisting arrest and possession of alcohol by a minor were not severe. So at least two of those cases involve resisting arrest and involve the plaintiff pulling away from the officer, which wouldn't have necessarily required the officer using some kind of force, either a wrist lock. But neither of those cases have the factor that Judge Moritz just asked you about, which is that there was a prior attempt to use lesser force. The lesser force that I'm describing is the hold that the plaintiff in Rowe and Long pulled away from. So what I'm saying is that is factually inconsistent with the cases. Is Rowe published? Rowe is not published, Your Honor. Neither. If I may briefly conclude my argument. You have 20 seconds. This court should not allow legal abstractions to obscure its view of the egregious misconduct in this case. Defendant Klamser slammed an unarmed 22-year-old woman into the concrete, face first, for minimally resisting arrest. We ask this court to dismiss the instant appeal for lack of jurisdiction or, in the alternative, affirm the district court's order denying Defendant Klamser's summary judgment and allow a jury to determine that his use of force was excessive. Thank you. Thank you. Kevin, does the appellant have any time for rebuttal? OK. Well, it was very well submitted by both sides. This matter will be taken under advisement. Court is in recess until 8.30 tomorrow morning.